Filed 7/22/13  In re Phillip Z. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re PHILLIP Z. et al., Persons Coming Under the Juvenile Court Law. | D063463 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. 513244B-D) |
| v. | |
| NINA Z., | |
| Defendant and Appellant. | |

APPEAL from judgments of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Nina Z. appeals from judgments terminating parental rights to her children, Phillip Z. (born 2006), Jazmine Z. (born 2008), and Jocelyn Z. (born 2010), under Welfare and Institutions Code section 366.26. (All further undesignated statutory references are to the Welf. & Inst. Code.) Nina contends the evidence was insufficient to support the juvenile court's finding that the beneficial relationship exception of section 366.26, subdivision (c)(1)(B)(i) did not apply. She also claims the court relied on improper factors in deciding the matter. We reject her contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Nina's live-in boyfriend, Charles B., Sr. (Charles), suffers from mental health issues and could not stand listening to the children argue and cry. He admitted lifting Phillip up by the throat, tying Phillip's hands and feet and placing socks in Phillip's mouth. He also admitted tying up Jazmine and forcing Phillip to drink hot sauce and repeatedly run up and down stairs "until Phillip could not run anymore" as a form of discipline. In June 2011, the San Diego County Health and Human Services Agency (the Agency) filed petitions under section 300, subdivision (b) claiming Phillip and Jazmine were at risk because Charles physically abused and excessively disciplined them, and Nina's mental illness, developmental disability and substance abuse rendered her unable to protect the children and provide them with regular care. The petitions for Jazmine and Jocelyn contained additional allegations under section 300, subdivision (j) alleging they were at risk of suffering abuse similar to the abuse Charles inflicted on Phillip.

2

The Agency detained the children and later moved them to a temporary foster home. Nina submitted on all counts of the children's petitions. The juvenile court found the petitions true by clear and convincing evidence, removed the children from Nina's care and ordered them placed in a licensed foster home.

In February 2012, the social worker recommended terminating Nina's reunification services and scheduling a section 366.26 hearing. Although Nina had participated in all of her services, the social worker concluded that she had failed to make significant progress. The children all suffer from some level of developmental delay. Nina's therapist reported that because the children have special needs, many activities Nina chose for them during visitation were not appropriate. Additionally, Nina was unable to articulate why the children were removed from her care and how she intended to protect them in the future. An addendum report noted that Nina was due to deliver another child in March 2012 and that Charles was the alleged father.

At the contested six-month review hearing held in February 2012, the juvenile court found Nina had made some progress with her case plan and continued court ordered services for her to the 12-month review date. In March 2012, Nina gave birth to Charles B., Jr. The Agency placed a hospital hold on Charles, Jr., and filed a petition on his behalf because of Charles's abuse of Phillip and Jazmine.

At the September 2012 contested 12-month permanency hearing, the court found Nina had not made substantive progress with the provisions of her case plan and there was not a substantial probability the children would be returned to her care by the 18-month date. It terminated her reunification services and scheduled a selection and

3

implementation hearing.  At that time, the children were living in Riverside County with nonrelative extended family members Alma P. and Richard J., who had guardianship of the children's older half brother Jesse, and who had recently accepted placement of Charles, Jr.

At the January 2013 contested section 366.26 hearing, the juvenile court found by clear and convincing evidence that the children would likely be adopted if parental rights were terminated, and that none of the exceptions to adoption found in section 366.26, subdivision (c)(1)(B) applied.  It terminated Nina's parental rights, ordered adoption as their permanent plan and designated their caregivers as prospective adoptive parents.  Nina timely appealed.

## DISCUSSION

Nina impliedly concedes that the children are adoptable, but asserts her parental rights should not have been terminated given the beneficial nature of her ongoing relationship with the children.  We are not persuaded.

Parental rights may be terminated if there is clear and convincing evidence of adoptability (§ 366.26, subd. (c)(1)); however, an exception exists where a parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)  A beneficial relationship is one that promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with adoptive parents.  (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)  The parent must show that the parent-child relationship is such that the child will be greatly harmed by the termination of parental

4

rights, so that the presumption in favor of adoption is overcome. (*In re Brittany C.* (1999) 76 Cal.App.4th 847, 853-854.)

Implicit in this standard is that "a *parental* relationship is necessary for the exception to apply, not merely a friendly or familiar one. [Citations.]" (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.) The existence of this relationship is determined by taking into consideration "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs . . . ." (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 576.)

We review the juvenile court's ruling under the substantial evidence test (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 576), viewing the evidence in the light most favorable to the prevailing party (*In re J.I.* (2003) 108 Cal.App.4th 903, 911). We do not attempt to resolve conflicts in the evidence or evaluate the weight of the evidence; rather, we must draw all reasonable inferences in support of the court's findings and affirm the order even if there is substantial evidence supporting a contrary finding. (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610.)

The Agency acknowledges that Nina had regular and frequent visitation and contact with the children throughout most of this dependency. Visitation monitors reported that Nina acted in a parental role by bringing snacks, changing diapers and in monitoring, correcting and playing with the children. The juvenile court ultimately found, and the Agency does not challenge, that Nina shared "a warm and affectionate relationship" with the children and that the children were attached to her. Such positive interactions, however, will not overcome the adoption preference when they do not

evidence that a "sufficiently *significant* relationship existed between [parent and child] such that termination of parental rights would be detrimental to the child." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 468.)

The children were about five, two and one years old when the Agency removed them from Nina's care. At the time of the section 366.26 hearing, the children had not lived with Nina for about 18 months. During this 18 month period, Nina never progressed to overnight visits or even to unsupervised visitation. At the time of the section 366.26 hearing, Nina visited the children once a week.

After the children were removed, Nina repeatedly failed to acknowledge that Charles posed a threat to the children. Ultimately, about five months before the section 366.26 hearing, Nina was able to identify to her therapist abusive behaviors that Charles had committed towards her children. The therapist concluded that based on Nina's history, Nina had "poor judgment and insight regarding effective parenting skills as well as the impact of her own behavior upon the emotional stability and security of her children. The physical safety of her children is of concern due to the continued contact with her boyfriend."

At the section 366.26 hearing, Nina testified that she could not remember her last contact with Charles and claimed she had no contact with Charles since the birth of Charles, Jr., in March 2012. The record, however, contains evidence that Charles answered the door to Nina's home three days after the birth of Charles, Jr. Additionally, less than two months before the section 366.26 hearing, the Agency learned that Nina visited Charles almost daily and often stayed where Charles lived.

Taken together, this evidence supports the family court's implied conclusion that Nina did not play " 'a parental role' " in her children's lives. (*In re Andrea R.* (1999) 75 Cal.App.4th 1093, 1108.) One of the principal roles of a parent is to protect children from "a substantial risk that the child will suffer[ ] serious physical harm." (§ 300, subd. (b).) The evidence suggests Nina is unable or unwilling to assume that role. More importantly, the evidence suggests a continuing danger that Nina would fail to protect the children from Charles. In contrast, the evidence does not show that terminating the children's brief, albeit happy, visits with Nina would be detrimental to them. Rather, the Agency concluded that "[a]lthough the children are attached to and love [Nina], the benefits of adoption outweigh the detriment the children would suffer if [Nina's] parental rights were terminated."

We reject Nina's argument that the Agency and the juvenile court used improper standards in determining application of the beneficial relationship exception. Namely, Nina points to the Agency's argument at the section 366.26 hearing that she failed to protect the children from Charles. She contends "[i]f this were the standard, the exception would never apply." Nina also points to the juvenile court's comment that she was "still getting supervised visitation."

Examining the Agency's argument in context, it is clear the Agency's comment was not intended to be an articulation of what legal standard the court should apply, especially where the Agency properly articulated the proper legal standards elsewhere in its argument. Similarly, the trial court's comment merely recognized that a parent's

7

ability or inability to protect a child from danger is important in ascertaining whether the parent occupies a parental role.

Where, as here, a parent has not successfully reunified with her children, but has shown positive interaction with her children, the court must determine whether the benefit the children obtain from such contact outweighs the children's need for "a stable, permanent home." (*In re Brittany C., supra,* 76 Cal.App.4th at p. 853.) Significantly, a permanency planning hearing only occurs "after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D., supra,* 78 Cal.App.4th at p. 1350.) This is not an "extraordinary case." (*Ibid.*) Accordingly, we affirm the juvenile court's denial of the beneficial relationship exception.

## DISPOSITION

The judgments are affirmed.

MCINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.

8